**INDEPENDENT INSURANCE AGENTS OF AMERICA, INC., et al., Appellants,**

v.

**Robert L. CLARKE, Comptroller of the Currency, et al.**

**NATIONAL ASSOCIATION OF LIFE UNDERWRITERS, et al., Appellants,**

v.

**Robert L. CLARKE, et al.**

**Nos. 90–5209, 90–5214.**

United States Court of Appeals, District of Columbia Circuit.

May 22, 1992.

Jonathan B. Sallet, for appellants. Ann M. Kappler, Washington, D.C., also entered an appearance, for appellants.

Theodore C. Hirt, Atty., U.S. Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Jay B. Stephens, U.S. Atty., Anthony J. Steinmeyer, Atty., Dept. of Justice, and Lester W. Scoll, Atty., Office of Comptroller of Currency, Washington, D.C., were on brief, for appellee Clarke.

Kenneth L. Bachman, Jr., Giovanni P. Prezioso, and Marc C. Krantz, Washington, D.C., were on brief, for appellee U.S. Nat. Bank of Oregon.

John J. Gill and Michael F. Crotty, Washington, D.C., were on brief, for amici curiae American Bankers Ass'n and Oregon Bankers Ass'n, urging affirmance.

Before MIKVA, Chief Judge, WALD, HARRY T. EDWARDS, RUTH BADER GINSBURG, SILBERMAN, BUCKLEY, STEPHEN F. WILLIAMS, D.H. GINSBURG, SENTELLE, HENDERSON, and RANDOLPH, Circuit Judges.

On Appellees' Suggestions for Rehearing En Banc

### ORDER

PER CURIAM.

Appellees' Suggestions for Rehearing *En Banc* have been circulated to the full Court. The taking of a vote was requested and responses were received. Thereafter, a majority of the judges of the Court in regular active service did not vote in favor of the suggestions. Upon consideration of the foregoing, it is

ORDERED, by the Court *en banc,* that the suggestions are denied.

SILBERMAN, STEPHEN F. WILLIAMS and D.H. GINSBURG, Circuit Judges, would grant the suggestion of appellee United States National Bank of Oregon, limited to Point II thereof.

Separate statement filed by SENTELLE, Circuit Judge, concurring in the denial of rehearing *en banc,* with whom BUCKLEY and KAREN LeCRAFT HENDERSON, Circuit Judges, join.

Separate statement filed by SILBER-MAN, Circuit Judge, dissenting from the denial of rehearing *en banc*, with whom STEPHEN F. WILLIAMS and D.H. GINS-BURG, Circuit Judges, join.

Separate statement filed by RAN-DOLPH, Circuit Judge.

SENTELLE, Circuit Judge, concurring in the denial of rehearing *en banc*, with whom Circuit Judges BUCKLEY and KAREN LeCRAFT HENDERSON join:

I write separately expressing concurrence in the Court's denial of rehearing *en banc* to respond briefly to a theory advanced by our dissenting colleagues.

Our colleagues question the "judicial power" of a federal court to decide an issue of law concededly dispositive of the case where parties have not raised the issue. I think it most apparent that federal courts *do* possess this power. The alternative is that the parties could force a federal court to render an advisory opinion. What the dissenters in effect argue is that the parties can stipulate to the state of underlying law; frame a law suit, assuming that stipulation; and obtain from the court a ruling as to what the otherwise dispositive law would be if the stipulated case were in fact the law. Indeed, that is precisely what would have occurred in this case had the panel not, *sua sponte*, raised the question of the repeal of section 92.

It has long been recognized that we are "free to ignore" stipulations as to matters of law. *NLRB, Local 6 v. FLRA*, 842 F.2d 483, 485 n. 6 (D.C. Cir.1988); *see also Barry v. United States*, 865 F.2d 1317, 1326 (D.C.Cir.1989) ("A concession by a party as to a matter of law, unlike a stipulation of fact, need not hinder a court from finding the proper legal view.") (Sentelle, J., dissenting on other grounds). Thus, by declining to argue that Congress repealed the section, appellants cannot stipulate into existence a repealed statute and then compel the Court to compliantly advise the parties what it would do if that statute existed. "[I]t is quite clear that 'the oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions.'" *Flast v. Cohen*, 392 U.S. 83, 96, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968) (quoting C. WRIGHT, FEDERAL COURTS 34 (1963)).

The soundness of this rule is suggested by the following: If the parties can by stipulation bring into existence section 92 and have us decide whether the Comptroller properly exercised his authority under that statute, what is to prevent the parties from next asking us whether the delegation of that authority to the Comptroller was constitutional?

That parties have assumed and the Comptroller has enforced the repealed statute for over seventy years seems to me irrelevant to the question. The question is not how long the parties assumed a certain state of the law, but whether that state of the law is merely an assumption. The passage of time, the acquiescence of the parties, the assumptions of officials, even all taken together cannot enact a statute. Legislation only comes into existence through bicameral congressional enactment and presentment to the President of the United States. U.S. Const. art. I, § 1 and § 7, cl. 2 & 3; *INS v. Chadha*, 462 U.S. 919, 946, 103 S.Ct. 2764, 2781, 77 L.Ed.2d 317 (1983). No stipulation by an executive official purporting to operate under a statute and a party affected by the official's actions can bring that statute into existence, even for purposes of a judicial decision as to its construction.

I agree with the dissent that there are obvious limits on the power of the Court—I disagree with the dissent as to what those limits are. I am convinced that it is within the Court's power to determine the existence of a statute essential to the determination of a case or controversy whether or not the parties assume or stipulate that the statute does or does not exist. At bottom, I do not think it within the power of the Court to render an advisory opinion on the construction of a statute whose existence depends on the failure of the parties to assert its invalidity.

SILBERMAN, Circuit Judge, dissenting from the denial of rehearing *en banc*, with whom Circuit Judges STEPHEN F. WILLIAMS and D.H. GINSBURG join:

We think this case should be reheard *en banc*, but the rehearing should be confined

to an issue raised only by appellee United States National Bank of Oregon: did the court properly reach and decide the question whether the statutory provision on which the Comptroller based his regulation, and which has been enforced for over 70 years, was repealed by Congress in 1918? As the dissenting opinion points out, the appellant trade associations, which represent insurance agents and underwriters, deliberately refused to argue (waived) any claim that Congress did repeal section 92. Even when the panel ordered supplementary briefing directed to that issue five months after argument, the appellants declined to argue that Congress repealed the section. Since the question is not jurisdictional, we do not see how it can be appropriate for a federal court, *sua sponte*, to decide it, and we fear that the implications of what might be thought a rather expansive view of federal judicial power could be profound indeed.

Almost any case brought rests on certain uncontested legal assumptions that may be thought to be logical antecedents to the issues in dispute. A court is not free, however, to examine itself any of those legal assumptions (if non-jurisdictional) just by asserting that they are "essential to the determination." Concurrence at 1078. That would mean that a lawsuit is framed by a court's notion of the logical way to think about a legal problem, and not by the parties' controversy. A majority of this court rejected that concept in a statement of Judge Bork joined by Judges Ginsburg, Scalia, Starr, Silberman, and Buckley concurring in the denial of rehearing *en banc* in *King v. Palmer*, 778 F.2d 878, 883 (D.C.Cir.1986). The United States, concerned that a panel of this court had accepted and ratified what the United States thought might be an improper expansion of Title VII (to cover a claim for relief "for sex-based discrimination" by a woman who alleged that she was denied a promotion in favor of another woman who had a sexual

relationship with their supervisor, *id.*), wished time to consider whether to file an *amicus* brief supporting rehearing. We denied rehearing because the District of Columbia, the defendant, had not challenged the plaintiff's expansive view of Title VII but rather, assuming coverage, argued that its conduct did not violate the statute. Judge Bork said:

> Rehearing of that issue *en banc* would be inappropriate because no party challenged that application of Title VII on appeal and the issue was not briefed or argued to the panel.... Because the point was *not* before the panel on appeal there is no occasion to address the issue *en banc*.

*Id.* (emphasis in original). In other words, the statement treated the panel's approval of that interpretation, although phrased as a holding, as limited only to that case and therefore not binding precedent. The *en banc* majority thought that even if it disagreed with what the concurrence terms the parties' "stipulation of law," it would be inappropriate so to hold because the issue was not contested in the case.

With all due respect to our concurring colleagues, we think they have the advisory opinion point exactly backwards. An advisory opinion is "an abstract determination by the Court of the validity of a statute ... or a decision advising what the law would be on a hypothetical state of facts." *Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace*, 288 U.S. 249, 262, 53 S.Ct. 345, 348, 77 L.Ed. 730 (1933). When a court issues an opinion on an uncontested, non-jurisdictional matter of law like the one here, it has made "an abstract determination ... of the validity of a statute" and issued an advisory opinion—although to the world rather than the parties—because the issue was not part of the case or controversy.[1]

The government makes a forceful argument that the panel, having reached the question whether section 92 was repealed

---

1. It seems to us that the phrase "stipulates to a matter of law" is too general to be useful in consideration of this kind of problem. We would agree, for instance, that if both parties simply misread a Supreme Court decision in their briefs we would not be bound to that interpretation. But that is far removed from a party's failure to bring an analytically separate claim that we thought was available. We are not free to add such a claim to a case.

in 1918, decided the matter incorrectly. Given the importance of this issue to the banking and insurance businesses throughout the country, we would ordinarily be inclined to view the government's petition sympathetically. We do not so regard the government's petition here, because, having vigorously argued before the panel that the court should not reach the "repeal" question, the government now quietly drops that argument and urges us to do that which it originally contended was improper—reach the repeal issue but decide it, instead, in the government's favor.

We full well recognize that the panel's opinion *itself* created legal uncertainty concerning the sale of insurance by banks located and doing business in small towns (which has been the settled practice for most of this century), and, therefore, it would be only natural for the Comptroller to wish a speedy *judicial* action to dispel this uncertainty. But we are frankly disappointed that the government as a whole would not have thought the question of judicial power—surely, in the long run—to be more important.

In any event, the Supreme Court may well be in a better position to deal with both issues. Now that the insurance industry, disinclined to look a gift horse in the mouth, is willing to support the panel's opinion and argue that Congress did repeal section 92, the Supreme Court could grant *certiorari* on that issue and, in light of its supervisory role over federal courts, still give guidance on the question that we think even more significant.

RANDOLPH, Circuit Judge:

It has become customary for members of this court to issue statements concurring in or dissenting from denials of rehearing *en banc*. I doubt the propriety of this practice. Such statements are rarely confined to setting forth the author's reasons for thinking or not thinking the case important enough to warrant *en banc* treatment. Although the statements may take this form, more often than not they contain expressions of a different sort. Judges commonly use denials of rehearing *en banc* to declare their views on the merits of the case. Those who were not on the original panel announce what they would have decided if only they had been called upon to rule. Judges who were members of the panel express afterthoughts, or respond to criticism contained in the *en banc* statements of other judges, or explain what the panel "really" meant. All of this may be good for the soul. But it rubs against the grain of Article III's ban on advisory opinions. The manner in which these *en banc* "bulletins" are formulated does not simulate the process of the court when it is actually deciding a case. If recurring issues are addressed, *en banc* statements may be tantamount to prejudgments. Another common practice on denials of rehearing *en banc* is, to my mind, also inappropriate. It occurs when the judge steps out of the robe and into the role of an advocate, urging the Supreme Court to take the case on certiorari and correct the panel's judgment.

Many years ago two wise judges found it a "dubious policy" if "any active judge may publish a dissent from any decision, although he did not participate in it and the Court has declined to review it *en banc* thereafter ... especially since, if the issue is of real importance, further opportunities for expression will assuredly occur." *United States v. New York, New Haven & Hartford R.R.*, 276 F.2d 525, 553 (2d Cir.) (statement of Friendly, J., joined by Lumbard, C.J.), *cert. denied*, 362 U.S. 961, 80 S.Ct. 877, 4 L.Ed.2d 876 & 964, 80 S.Ct. 877, 4 L.Ed.2d 878 (1960).

I fully agree with Judge Friendly and Judge Lumbard. In my view, denials of rehearing *en banc* are best followed by silence. They should not serve as the occasion for an exchange of advisory opinions, overtures to the Supreme Court, or press releases.

Before: SILBERMAN, BUCKLEY and HENDERSON, Circuit Judges.

## ORDER

Upon consideration of the petitions for rehearing of appellees, it is

Ordered, by the Court, that the petitions are denied.

Circuit Judge SILBERMAN would grant the petition for rehearing of the United States National Bank of Oregon.